## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RENARD TUCKER,** | **:** | |
| **(AIS # 173684)** | | |
| | **:** | |
| **Plaintiff,** | | |
| | **:** | **CIVIL ACTION 15-00014-CG-N** |
| **vs.** | | |
| | **:** | |
| **OFFICER GLOVER,** *et al.*, | | |
| | **:** | |
| **Defendants.** | | |

### REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendants' motion for summary judgment (Docs. 15, 23).  For the reasons stated below, it is recommended that summary judgment be granted in favor of Defendants Sherman Glover, Willie Harris, and Ramona Garrick, and the claims presented by Plaintiff Renard Tucker be dismissed with prejudice.

### I.    Factual Background.[1]

Plaintiff Renard Tucker is currently an inmate in the custody of the Alabama

---

[1]     The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.  Priester v. City of Riviera Beach, Fla, 208 F.3d 919, 925 n.3 (11th Cir. 2000) (citations and internal quotation marks omitted); see Cottone v. Jenne, 326 F.3d 1352 n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be actual facts.").  Nevertheless, for summary judgment purposes, the Court's analysis begins with a description of the facts in the light most favorable to Plaintiff and disregards legal conclusions and recitations of the basic elements of a cause of action.  See Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011); McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).

Department of Corrections ("ADOC") serving a life sentence for his convictions of murder, robbery, and assault.  (Doc. 1 at 5).  On July 15, 2014, Tucker was transferred by ADOC from the William E. Donaldson Correctional Facility ("Donaldson") to Holman Correctional Facility ("Holman") where he currently is incarcerated.  (Doc. 1 at 3).  During the transport to Holman, Tucker was secured in handcuffs and a waist chain and placed in the front passenger row of the transport van, with the grille gate and his property bag directly in front of him; he was not secured in a seat belt during the transport.  (Doc. 1 at 11; Doc. 23 at 2).

Officer Glover was driving the van on the date of incident and avers that a "vehicle in front of the transport van suddenly slowed to cross the median between the interstate, causing several vehicles to suddenly slow down, including the ADOC transport van." (Doc. 23 at 2).  The sudden braking caused Tucker to fall from his seat.[2]  Officer Harris immediately inquired as to whether Tucker was all right, but it is disputed as to whether or not Tucker responded in the affirmative or negative.  (See *infra* at section III., B., 2).  Tucker claims he suffered whiplash from the accident and continues to suffer neck pain.  (Doc. 1 at 10, 20).

Upon arrival at Holman, Defendant Nurse Garrick, as part of the routine

---

[2]     Plaintiff Tucker alleges, approximately ten (10) minutes prior to arrival at Holman, Defendant Glover lost control of the van, causing the van to skid across the road and Tucker to be propelled from his seat into the grille gate of the van.  (Doc. 1 at 10, 12).  Tucker contends he was in need of immediate medical care from the accident. Tucker also submits supporting affidavits from two other inmates who were passengers in the transport van on July 15, 2014.

Contrarily, Defendants Glover and Harris admit Tucker fell from his seat following the emergency braking of the van, but they contend Tucker never hit the grille gate.  The officers aver they never heard anything hit the grille cage, and claim they would have heard noise had Tucker made contact with the metal divider.  Defendants further contend Tucker did not complain about needing medical care or request immediate medical attention after the accident.  (Doc. 23 at 2).

processing of inmates at a new facility and intake procedure, examined Tucker. (Doc. 15 at 3). The medical notes from the receiving screening are unremarkable, revealing Tucker had normal blood pressure, pulse rate, oxygen level, and temperature readings at the time he arrived at Holman. (Doc. 15-1 at 9). Additionally, the executed screening form indicates Tucker had no "obvious pain or bleeding/other symptoms suggesting the need for emergency services" nor did he exhibit "any visible signs of trauma or illness requiring immediate emergency treatment or doctor's care." (Id. at 10-11). Two days later, on July 17, 2014, Tucker submitted a sick call request complaining that he had left neck and shoulder pain for three days. He was examined the same day and prescribed Motrin for pain. (Id. at 13-14). On July 25, 2014, Tucker submitted a sick call request complaining he was still hurting and had not yet seen the doctor. (Id. at 16). On August 1, 2014, Tucker was examined by a physician who assessed Plaintiff as suffering from neck/shoulder strain or sprain, prescribed Tramadol and Robaxin for pain, and ordered neck x-rays be obtained. (Id. at 17). The cervical spine and neck x-ray, performed on August 4, 2014, revealed no fractures or abnormalities except "modest degenerative changes of the cervical spine." (Id. at 18). Tucker subsequently filed five (5) sick call requests complaining of neck pain he attributed to the transfer accident on July 15, 2014. (See Id. at 19-33). Following each sick call request, he was timely examined by the staff in the health care unit and received treatment in the form of prescribed pain medication, muscle relaxers, and front cuff profiles. (Id.). Additionally, Defendant Nurse Garrick recommended on October 10, 2014, that the doctor review Tucker's chart, which was done on October 20, 2014, and the physician ordered Robaxin be added to Tucker's daily-prescribed medications. (Id. at 17, 23-24). In response to Tucker's January 14,

2015, request to receive a second opinion and CT scan to evaluate the cause of his neck

pain, the doctor ordered a CT scan with and without contrast.  (Id. at 27, 33).  The record

reveals that on February 19, 2015, another x-ray was performed in lieu of a CT scan of

Tucker's cervical spine and neck, and the radiology report indicated that "[t]he findings

are unchanged from 8/4/2014."[3] (Doc. 23-3 at 6).

      Plaintiff Tucker filed this lawsuit against Officers Glover and Harris and Nurse

Garrick claiming Eighth Amendment violations and seeking compensatory, punitive, and

nominal damages, and a Court ordered policy of requiring seatbelts for inmate passengers

on transport vehicles.  (Doc. 1 at 20-21).  Defendants have answered the suit and filed

special reports (docs. 12, 15, 23), and the Court has converted Defendants' pleadings to a

motion for summary judgment (Doc. 28), to which Plaintiff has responded.  (Docs. 48-

50).  After a complete and thorough review of the pleadings, the Court determines this

matter is ripe for consideration.

## II.    Standard of Review.

      Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248,

106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment."); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th

---

[3]     The records filed with the Court also reveal that Tucker has previously suffered a
neck injury and pain, which he had complained of prior to the incident at issue here.  A
medical sick call form filed by Tucker on March 12, 2012, denotes he injured his hand,
shoulder, and back, causing constant pain in his back and neck, for which he requested
medical attention.  (Doc. 23-3).

Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); see also Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993); see also Allen, supra, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'") internal citations omitted); see Comer v. City of Palm Bay, Fla., 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to
> wait until trial to develop claims or defenses relevant to the summary

judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom*. Jones v. Resolution Trust Corp., 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); see also LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party.").  In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); see Comer, *supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the Court has viewed the facts in the light most favorable to Plaintiff.  Comer, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts.  A genuine dispute requires more than "some metaphysical doubt as to the material facts."  A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

Garczynski, *supra*, 573 F.3d at 1165 (internal citations omitted).  In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  Resolution Trust Corp., *supra*, 43 F.3d at 599.

**III.  Analysis.**

**A.     Defendant's Immunity.**

      **1.        Sovereign Immunity.**

Plaintiff Tucker alleges violations of the Eighth Amendment of the United States Constitution against Officers Glover and Harris pursuant to 42 U.S.C. § 1983 for their alleged failure to secure him in a seatbelt during a vehicular transport, to provide him emergency or immediate medical attention, and to report the auto accident and injury. (Doc. 1 at 18-19, Doc. 21 at 4).  Defendants have asserted the affirmative defense of sovereign immunity for the allegations against them in their official capacities.

The Eleventh Amendment protects Defendants in their official capacities from Tucker's claims.  See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (With some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.  This jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)); Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[S]tate officials sued in their official capacity are []protected by the [Eleventh A]mendment." (citing Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985))).  In addition, "a state agency[] and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable..."

Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995) (citing Will v.

Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45

(1989)).  Thus, Tucker may not sue Defendants in their official capacities.

### 2.   Qualified Immunity.

Defendants, however, are not absolutely immune from suit in their individual

capacities, but are protected by qualified immunity, and Defendants have raised such a

defense.  (Doc. 23 at 4).

> Qualified immunity protects government officials from liability for civil
> damages unless they violate a statutory or constitutional right that was
> clearly established at the time the alleged violation took place. See
> Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565
> (2009); Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1184 (11th Cir.
> 2009). "The purpose of [qualified] immunity is to allow government
> officials to carry out their discretionary duties without the fear of personal
> liability or harassing litigation, protecting from suit 'all but the plainly
> incompetent or one who is knowingly violating the federal law.'" Lee[ v.
> Ferraro], 284 F.3d [1188,] 1194 [(11th Cir. 2002) ](citation omitted)
> (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)).
> Qualified immunity is a defense not only from liability, but also from
> suit... See id.
>
> "Under the well-defined qualified immunity framework, a 'public official
> must first prove that he was acting within the scope of his discretionary
> authority when the allegedly wrongful acts occurred.'" Terrell v. Smith,
> 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting Lee, 284 F.3d at 1194).
> Once the official has done so, the burden shifts to the plaintiff to satisfy
> the following two-pronged inquiry: (1) whether the facts that a plaintiff
> has shown make out a violation of a constitutional right; and (2) whether
> the right at issue was clearly established at the time of the defendant's
> alleged misconduct. Pearson, 555 U.S. at 232, 129 S. Ct. 808...The
> Supreme Court recently has made it clear that [courts] need not employ a
> rigid two-step procedure, but rather may exercise [their] discretion to
> decide "which of the two prongs of the qualified immunity analysis should
> be addressed first in light of the circumstances in the particular case at
> hand." Id. at 236, 129 S. Ct. 808.

Gilmore v. Hodges, 738 F.3d 266, 272-73 (11th Cir. 2013).  "Under controlling law, the

plaintiff[] must carry [his] burden by looking to the law as interpreted at the time by the

United States Supreme Court, the Eleventh Circuit, or [the highest court of the state from which the case arose]." Terrell v. Smith, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (quoting Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002).

The record evidence amply supports the determination that all Defendants were acting within the scope of their discretionary authority as prison officials at the time of the wrongful act at issue, and Tucker offers no evidence or argument to the contrary. Accordingly, the burden now shifts to Tucker to show why the defendants are not entitled to qualified immunity.

**B.    No Eighth Amendment Violation.**

Plaintiff Tucker alleges Defendants are liable for endangering his safety and causing him injury during his transport from Donaldson to Holman on July 15, 2014, for failing to provide him necessary medical treatment following the automobile incident and for failing to report the same to appropriate officials.  (Doc. 1 at 3).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate.  Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  In DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the

> affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

In order to prevail on an Eighth Amendment claim, an inmate must make both an objective and a subjective showing. In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983. To prevail on constitutional claims like the ones asserted by Plaintiff, he must prove that there was "a substantial risk of serious harm," that the defendants were subjectively deliberately indifferent to that risk, and causation. Hale, 50 F.3d at 1582; see also Farmer, 511 U.S. at 832-34.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . , but must be balanced against competing

penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quotation and citation omitted).  In prison conditions cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted).  In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  The Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment.  Id. at 839-40.

There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not . . . ." Farmer, 511 U.S. at 838.  It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of

keeping dangerous men in safe custody under humane conditions.'" Farmer, 511 U.S. at 844-45 (citations omitted).

Having set forth the general legal principles relevant to Tucker's claims, the Court now turns to the application of those legal principles to the facts before the Court.

       1.     No seatbelt during transport.

Tucker alleges in his complaint that Defendants Glover and Harris failed to secure him in a seatbelt during his transport to Holman, causing him to injure his neck when control was lost of the van and he was thrown into the grill cage. Although immaterial to determining the constitutionality of this allegation, notably, the facts presented by Tucker are inconsistent at this stage. Tucker first submits in his complaint that his seat was not equipped with a seatbelt (doc. 1at 11),[4] while Defendants aver, to the contrary, that the van was equipped with seatbelts for each inmate passenger.[5] (Docs. 23-1; 23-2). Subsequently, in his response to Defendants' answer, Tucker alleges that he asked Defendant Glover to fasten him in the seatbelt, but Defendant Glover ignored Tucker's

---

[4]     Tucker states, "The Officer that was transferring us to W.C. Holman-Correction-Facility that was on the transporting van did not force us or advise us to wear seatbelts as the front seat were [sic] I was seated at didn't have none." (Doc. 1 at 11). The affidavit of Inmate Burns attached to Tucker's complaint also avers that the van "did not have no seatbelts in the front-seat as we was seated. . . ." (Doc. 1-1 at 2).

[5]     Officer Harris avers that the van was equipped with "adequate seatbelts in the vehicle for the number of inmates [they] were transporting which is why there were two (2) vans used for transporting five inmates. The inmates are made aware of the seatbelts and advised to wear them and if they need assistance putting them on to notify one of the officers." (Doc. 23-1 at 2). Likewise, Officer Glover attests that "it is common knowledge that seatbelts are there if an inmate chooses to use them. The inmates can put the seatbelts on or request help from us to put them on, some inmates refuse to use the seatbelts due to already being in handcuffs and belly chains." (Doc. 23-2 at 2).

request.[6]  (Doc. 48 at 5, Doc. 49 at 1).  Despite this contradiction, whether Tucker's seat

lacked a seatbelt or whether Defendant Glover ignored the request to fasten it for Tucker,

the Court determines Tucker has failed to state a constitutional claim, as Tucker's

complaint is void of allegations or evidence that Defendants acted with deliberate

indifference or that the officers have a policy of refusing to buckle inmates in seatbelts

upon their requests. There are no facts presented that Officer Glover stated anything or

responded in any way to Tucker's request that would suggest a subjective intent to cause

harm to Tucker.  In total, the pleadings presented lack any facts suggesting or signifying

deliberate indifference, and the deprivation of safety restraints in the Department of

Corrections' vans or lack of use of seatbelts in transport vans alone does not rise to the

level of cruel and unusual punishment.

     This Circuit has determined that transportation of inmates without seat belts,

alone, does not rise to the level of a constitutional violation.  In Smith v. Sec'y, Dept. of

Corr., 252 F. App'x 301, 304 (11th Cir. 2007), the Eleventh Circuit examined whether or

not transporting inmates in converted utility vans that were not equipped with

manufacturers' seatbelts satisfied the objective component of the deliberate indifference

standard and was thereby an Eighth Amendment violation.  The Court relied on an Eighth

Circuit case, Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 904-06 (8th Cir.

1999) (Plaintiff in the case was forced to ride on a steel bench in the back of a van

without any safety restraints.  The plaintiff was thrown from the seat during transport and

---

[6]    Tucker states, "he suffered injuries in a prison van accident, after his request to
have his seatbelt fastened was refused." (Doc. 48 at 5).  He further submits, "I asked of
Officer Glover; would he fasten my seatbelt but was ignored.  I was unable to put the
seatbelt on myself.  I was fitted with a waist-belt chain restraint with attached handcuffs,
and leg restraints."  (Doc. 49 at 1).

paralyzed due to the fall.  The Eighth Circuit, however, found this practice did not rise to

the level of a constitutional deprivation.), as persuasive authority and determined that

riding in a van without seats, seatbelts, or windows was not a deprivation of the minimal

measure of life's necessities or was it something that modern society would find

intolerable.  Smith, *supra*, at 303-04; see also, Quinlan v. Pers. Transp. Servs. Co., LLC,

329 F. App'x 246 (11th Cir. 2009) (No constitutional violation when inmate was

shackled and transported without a seatbelt from Illinois county jail to Florida prison.);

Jabbar v. Fischer, 683 F.3d 54, 59 (2d Cir. 2012) (Plaintiff's complaint focused on the

"design" of the van and its lack of seatbelts and failed to show an "intent to punish or

other improper motivation" and was dismissed for failure to state a plausible claim.);

Dexter v. Ford Motor Co., 92 F. App'x 637, 643-44 (10th Cir. 2004) ("[F]ailure to

seatbelt an inmate does not violate the constitution."); Poulin v. Jeter, 6:08-cv-299-Orl-

31KRS, 2010 U.S. Dist. LEXIS 96483, 35-36, 2010 WL 3701384 (M.D. Fla. Sept. 15,

2010) (Transporting prisoners in vans without seatbelts does not amount to a

constitutional violation.); Bryant v. Downs, 6:09-cv-1670-Orl-28KRS, 2010 U.S. Dist.

LEXIS 63919, 15-16, 2010 WL 2593564 (M.D. Fla. June 29, 2010) ("Plaintiff has failed

to state a colorable claim for relief" because "[t]he Eleventh Circuit has determined that

transporting prisoners in vans without seatbelts does not amount to a constitutional

violation.").

     In Simmons v. Yates, a factually similar case, the court found the plaintiff's claim

sounded in mere negligence.  Simmons, 3:13-cv-384-J-99TJC-JRK, 2013 U.S. Dist.

LEXIS 173445 (M.D. Fla. Oct. 21, 2013).  Simmons, a wheelchair confined inmate, was

being transferred to another prison.  He was restrained in handcuffs and waist chains, was

removed from his wheelchair and placed in the van for transportation.  Simmons claimed

officers "failed to secure him in a seat belt and when the van took a sharp curve, he was

propelled from his seat onto the floor, causing injuries to Plaintiff's right ankle, right leg,

and back." Id. at *2.  Simmons complained he was unable to secure himself given his

restrictions from shackling, and that the defendants failed to prepare an incident report.

Id.  The court found Simmons "failed to present operative facts that show that [the

d]efendants deprived him of any rights, privileges or immunities secured by the

Constitution or laws of the United States. The alleged actions of the transport officers

sound in negligence," not the requisite deliberate indifference.  Id. at *4.

> Deliberate indifference is not the same thing as negligence or
> carelessness." Ray v. Foltz, 370 F.3d 1079, 1083 (11th Cir. 2004) (citation
> omitted). "Accidents, mistakes, negligence, and medical malpractice are
> not 'constitutional violation[s] merely because the victim is a prisoner.'"
> Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994) (citing Estelle
> v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976));
> Rooney v. Watson, 101 F.3d 1378, 1380-81 (11th Cir. 1996) (stating that
> the alleged negligence of the police officer in driving the police car at an
> excessive speed "does not transform a state tort claim into a constitutional
> deprivation"), cert. denied, 522 U.S. 966, 118 S. Ct. 412, 139 L. Ed. 2d
> 315 (1997); Cannon v. Taylor, 782 F.2d 947, 949-50 (11th Cir. 1986).

Id. at *4-5.  Thus, given the precedent of the Eleventh Circuit and the lack of any specific

allegations evidencing deliberate indifference, the Court determines there is no factual

issue for trial and this claim should be dismissed.[7]

---

[7]     In the alternative to dismissal for finding no constitutional violation, Defendants
would be entitled to dismissal based on qualified immunity had the Court determined
there to be a violation.  With no clearly established law on this issue, Defendants would
be immune from suit.  See Adams v. Poag, 61 F.3d 1537, 1542 (11th Cir. 1995).

2.        **Delay in medical care.**

Next, Tucker claims that Defendants violated his rights under the Eighth

Amendment by denying emergency medical treatment following the accident and

delaying receipt medical care upon arrival at Holman.  (Doc. 1 at 19).  "The Eighth

Amendment's proscription of cruel and unusual punishments prohibits prison officials

from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v.

Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104,

97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  In order to demonstrate a denial of medical care

in violation of the Eighth Amendment, Tucker must prove both an objective and

subjective component. To meet the objective element, Tucker first must demonstrate the

existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243

(11th Cir. 2003).  A serious medical need is "'one that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth

Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  "In either of these situations, the medical

need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id.

(internal quotation marks and citation omitted).

In analyzing whether or not Tucker suffered a serious medical need that required

immediate medical attention, the Court relies on the medical record and the facts

presented in the light most favorable to the nonmovant, Tucker.  Tucker claims he

slammed his head into the metal screen or grille cage that separates the passenger seating

of the van from the driver's seating area before falling to the floor.  (Doc. 1 at 12).

Officer Harris immediately inquired as to whether Tucker was alright, but Tucker states,

he "could not respond due to being traumatized by [the] incident."[8]  (Doc. 1 at 13).

Inmate Burns also asked Tucker if he was alright.  Tucker does not say if he answered

Burns, though he "overheard inmate Burns telling Officer Harris inmate Tucker needed

medical attention right now."  (Id.).  The complaint states that Officer Harris ordered

inmate Burns to assist Tucker off the floor and back onto the van seat.  (Id.).  Tucker

alleges he was unable to straighten his neck and told Burns his "neck hurt bad,"  though

he does not claim that Burns told this to either of the officer defendants..  (Id.; Doc. 1-1 at

4).   After receiving no response from Tucker as to whether he was "alright," Officer

Harris informed Tucker that they were only ten minutes from arriving at Holman where

Tucker could see a nurse for medical attention, if necessary.  (Doc. 1 at 13; Doc. 1-1 at

3).

        Upon arrival at Holman, Defendant Nurse Garrick examined Tucker as part of the

routine processing procedure.  The intake medical screening form referenced no visible

signs of injury, confirming no swelling, no bruising, no cuts, no redness were present.

The measurements of Tucker's vital signs also failed to show elevations, abnormalities,

or indications of sustained trauma.  Though Tucker submits he complained to Nurse

Garrick that he was experiencing "a sharp pain in [his] neck and lower back, that [he]

believed to be a result of [] being thrown forward from the front seats of the transporting

---

[8]        Defendants, however, aver that Tucker "fell from his seat onto [his] property
[bag] that was directly in front of him," (doc. 23-1 at 1) and when asked "if he was
alright," "inmate Tucker responded 'Yes, I'm alright', and got back in his seat.  [Officer
Harris] then advised inmate Tucker that [they] were only a few miles from the facility if
he needed medical attention.  Inmate Tucker responded 'I'm alright, I'm straight.'  (Id. at
1-2).  Defendants Harris and Glover further state that Tucker never made contact with the
metal separation screen and that no other passengers lost their seating.  (Doc. 23-1 at 2;
Doc. 23-2 at 1).

van's back into the grill cage of the passenger compartment" (doc. 49 at 2), Nurse

Garrick did not chart the injury in the medical file and instead gave Tucker a sick call

form to be completed and submitted.  (Id.).  Notably, Tucker signed the intake screening

form indicating he was not in need of emergency care and was not suffering from pain.[9]

(Doc. 15-1 at 10-12).

As to whether or not Tucker's injury was severe and required emergency care, the

record lacks such findings.  Defendants report there was no visible injury to Tucker;

Tucker does not articulate any cut, swelling, bruising or visible markings indicating a

sever injury; and the inmate affidavits in support of Plaintiff's claim do not describe any

injury to Tucker.  (See Docs. 1-1; 1-2).  Most importantly, the record shows that Tucker

never asked Officers Glover or Harris for immediate medical attention; instead, Tucker

mentions only that he was "traumatized" by the incident and was unable to answer

Officer Harris' questions, but trauma references more of a psychological concern, not a

health risk or injury requiring immediate treatment. (Doc. 1 at 13).  While inmate Burns

did tell the Officers he believed that Tucker needed medical attention, there is nothing to

the record to indicate that Burns possessed any special knowledge as to the severity of

Tucker's condition when he requested help for Tucker.   Correspondingly, the record

lacks evidence that Tucker's alleged injury neck stiffness was "so obvious that even a lay

person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at

1187.  Thus, the Court finds that Defendants are not liable for failure to provide

emergency medical care to Tucker because Tucker never requested it nor did he

---

[9]     In his response to Defendants' motion for summary judgment, Tucker contends he
signed the form without reading it, amidst the pile of other papers he was required to sign
upon being booked into Holman.  (Doc. 49 at 2).

objectively appear to need it;[10] on the contrary, even without a response from Tucker asking if he was "alright," the Officer Defendants did not ignore the possibility that Tucker may need care evidence by the parties' affirmations that Defendants advised Tucker he could obtain any necessary medical treatment upon arrival at Holman.[11]

Assuming *arguendo*, for purposes of this motion, that Tucker had demonstrated an "objectively serious medical need" satisfying the first component of his Eighth Amendment claim, Tucker would fail to demonstrate the necessary subjective element of his claim, that is, whether Defendants acted "with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citation omitted).

In order to constitute "deliberate indifference," Defendants must have known of and disregarded an excessive risk to Tucker's health. Farrow, 320 F.3d at 1245. The record is void, however, of evidence suggesting Defendants knew of a risk to Tucker or even should have known of a significant risk to Tucker and disregarded it. Tucker presents no statements by Officers Glover or Harris that they knew Tucker needed emergency medical treatment and purposefully denied him care. In fact, Tucker submits that Officer Harris, immediately following the accident, inquired as to his wellbeing and checked to see whether or not he had sustained any injury. Given that the transport van

---

[10]    Though Tucker claims inmate Burns requested medical help for Tucker from the officers, the record indicates this request was made before Tucker told Burns his neck was in pain, when Tucker was not answering either Burns's or the officers' inquiries of whether he was "alright."

[11]    In further support that Defendants were not deliberately indifferent to emergency medical needs of Tucker, the record demonstrates Tucker's condition never worsened from July 15, 2014 through January 2015; his complaints never changed; and there was never a medical risk of harm to Tucker. Therefore, the Court concludes Tucker has failed to prove the objective component to establish a denial of medical care in violation of the Eighth Amendment. Farrow, 320 F.3d at 1243.

included at least three other non-injured inmates and the van was in close proximity of its destination, Officer Harris informed Tucker that if he needed any medical attention he could obtain it upon arrival at Holman.  Thereby, the record confirms Defendant officers were not deliberately indifferent to Tucker's medical needs.

Tucker appears to complain that upon arrival at Holman on July 15, 2014, Nurse Garrick violated his constitutional rights by denying him emergency medical treatment and failing to complete a "body chart."  The record refutes such an Eighth Amendment claim.  The evidence demonstrates that on July 15, 2014, there were no injuries visible on Tucker's body that necessitated notation with a body chart.  And while it is arguable that Nurse Garrick should have documented Tucker's statements regarding the accident, given that Tucker specifies he informed Nurse Garrick of the accident, Tucker concedes Nurse Garrick not only advised him to submit a sick call form for further examination, but gave him the necessary form.  Taking Tucker's allegation as true, Nurse Garrick's failure to complete a body chart was negligent at worst, as Nurse Garrick did not disregard a known health risk to Tucker, rather she supplied Tucker with the appropriate sick call form required for medical treatment.  The record further belies Tucker's claim by revealing Tucker himself failed to request medical treatment until July 17, 2014, despite receiving a sick call request form on July 15.  Additionally, Tucker's own evidentiary support lacks details of any visible or observable injuries that the defendants could have or should have noticed, and he clearly received medical care and treatment on multiple occasions.  Furthermore, he received two diagnostic tests, that were evaluated by physicians, indicating no injury or damage to his neck or spine, and Tucker was

prescribed pain medication for his subjective complaints of pain.  Thus, Tucker's claim is not borne out by the record.

  Plaintiff Tucker also fails to establish any claim as to delay of receipt of medical care.   He has the burden of establishing that he suffered a significant effect from the delay of treatment.  See Hill, 40 F.3d at 1188.  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  Id.  "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay."  Hill, 40 F.3d at 1189.

  A review of Tucker's medical records shows that he presented to the prison health care unit upon arrival at Holman.  (Doc. 15-1 at 9).  After physical examination, Defendant Garrick noted Tucker did not need emergency treatment for any condition. (Id. at 10).  Following his initial screening by Defendant Garrick, Tucker proceeded to wait two days before submitting his first sick call form for an injury he claims required emergency care.  (Id. at 13).  The record further indicates that Tucker was examined on July 17, 2014, August 1, 2014, August 21, 2014, October 10, 2014, January 14, 2015, January 21, 2015 for complaints of neck pain, and pain medication and special cuff profiles were prescribed as needed.  (Id. at 14, 17, 20-21, 24, 28, 31).  In addition, diagnostic tests were completed that indicated Tucker suffered no serious, treatable injury.  An x-ray of Tucker's cervical spine was performed on August 4, 2014, and revealed no fracture or abnormalities but, rather, only modest degenerative changes of the

cervical spine. (Id. at 18).  An additional x-ray was performed on February 19, 2015, which revealed no changes from the August 4, 2014 scan.  (Doc. 23-3 at 6).

Tucker has not proffered any probative evidence which suggests either deliberate indifference on the part of Defendants or that the medical care he received was inadequate.  First, Tucker has not submitted any "verifying medical evidence" showing that the two day delay in medical treatment resulted in the diminishment of his physical or mental health.  Hill, 40 F.3d at 1188.  The absence of such evidence further undermines a finding that Defendants were deliberately indifferent to Tucker's serious medical needs.  While "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain," Hill, 40 F.3d at 1187, the record in this case simply does not show such.  The record reflects that Tucker was given a medical screening on the day of the incident with Defendants Glover and Harris, July 15, 2014 and then again on July 17, 2014, August 1 and 21, 2014, October 10, 2014, and January 14 and 21, 2015 (id. at 14, 17, 20-21, 24, 28, 31), and received x-ray scans on August 1, 2014 and February 19, 2015.  (Doc. 15-1 at 18; Doc. 23-3 at 6).  "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."  Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).

Considering all of the circumstances surrounding the treatment that Tucker received for his medical problems, along with the vague and conclusory allegations, the undersigned finds that Tucker has not presented facts which suggest that Defendants were deliberately indifferent to his medical needs following the accident in the transport van on July 15, 2014.  To the contrary, the evidence reflects that prison staff, with the aid of

the medical staff at Holman, responded to the medical complaints and needs presented by Tucker.  Thus, Tucker has failed to establish the subjective element of his denial of medical care claim.  Because Tucker has failed to establish both the objective and subjective elements of his Eighth Amendment medical care claim, the Court determines that the evidence demonstrates that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law on this claim as well.

> ### 3.      Failure to report accident.

Tucker's final allegation is directed at Defendants Glover and Harris for their failure to "call-in and alert the nursing unit" at Holman that a vehicular accident had occurred while transporting Tucker.  (Doc. 21 at 3).  Tucker claims Defendants acted with deliberate indifference to his health and safety by failing to immediately report the accident.  (Id. at 4).

To show deliberate indifference, a plaintiff must establish that a defendant had "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence."  West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007) (citation and quotation marks omitted); see Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (Essential to establishing an Eighth Amendment claim, a plaintiff must first show that the defendants' conduct was "sufficiently serious to constitute a cruel or unusual deprivation - - one denying the minimal civilized measure of life's necessities.  Second, there must be a subjective intent by the public officials involved to used the sufficiently serious deprivation in order to punish.") (citations and internal quotations omitted).  "To act with deliberate indifference, a state actor must know of and disregard an excessive—that is, an extremely great—risk to the victim's

health or safety." Waddell v. Hermerson, 329 F. 3d 1300, 1306 (11th Cir. 2003) (internal citations omitted).  "Th[is] deliberate indifference standard is a difficult burden for a plaintiff to meet," because human error does not equate to deliberate indifference.  West, 496 F.3d at 1327 (citation and quotation marks omitted).

Reviewing the record in the light most favorable to Plaintiff, and applying a liberal construction of his complaint, the Court finds Tucker fails to meet his burden on establishing the requirements of deliberate indifference against Defendants Glover and Harris.  Rather, the evidence belies any claim of deliberate indifference on the part of Defendants for their failure to report the accident in transit, as the record reveals there was never an extreme risk posed to Tucker's health or safety.  This is evidenced by the record in that the transport van was within ten miles of its destination, no visible signs of a medical emergency were observed at the time of the accident, and Tucker himself never requested immediate medical care.  After seeing Nurse Garrick upon arrival, Tucker waited two more days before requesting a medical exam, and diagnostic scans revealed no severe injury or worsening of condition over time.  Thus, there was never a substantial risk of serious harm to Plaintiff's health or safety.  See Farmer, 511 U.S. at 837-38.

For the reasons above, the Court finds that Plaintiff fails to meet his burden on the objective and subjective requirements of deliberate indifference relating to Defendants Glover and Harris.  Because Plaintiff would carry the burden of proof on each essential element of deliberate indifference at trial, and because he fails to provide any evidence in which a trier of fact might find in his favor, the Court finds that summary judgment in favor of Defendants is warranted, and Tucker's complaint be dismissed with prejudice for the following reasons.  See Comer, 265 F.3d at 1192 ("Summary judgment is required

24

where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial."). Thus, Plaintiff Tucker has failed to establish a genuine issue for trial and this claim should be dismissed.

## IV.    Conclusion.

Based on the foregoing, it is recommended that Defendants' motion for summary judgment be **granted** and that Plaintiff Tucker's action against Defendants be **dismissed** with prejudice.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4.  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in

the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 9th day of November 2015.

*/s/ Katherine P. Nelson*

_____
UNITED STATES MAGISTRATE JUDGE